# 23-7921

## United States Court of Appeals
## for the Second Circuit

GALINA SHELOMENTSEVA AND IN CHILD CARE AURA, LLC,

*Plaintiffs-Appellants,*

v.

COMPUTOOLS LLC,

*Defendant-Appellee,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANT-APPELLEE**

Dimitry Joffe
Joffe Law P.C.
54 West 47th Street, Suite 6r1
New York, New York 10036
(917) 929-1964
dimitry@joffe.law
*Counsel for Defendant-Appellee*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF THE CASE ........................................................................... 1

SUMMARY OF ARGUMENT .......................................................................... 5

ARGUMENT ...................................................................................................... 5

    1.    Appellants forfeited their arguments by
              failing to present them to the District Court ........................................ 5

    2.    Appellants' forfeited arguments have no merit ................................... 7

    3.    The Appeal is frivolous within the meaning of FRAP 38 ................. 13

CONCLUSION .................................................................................................. 15

CERTIFICATE OF COMPLIANCE .................................................................. 16

CERTIFICATE OF SERVICE ........................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312 (2d Cir. 1990) ....................... 15

*Bartel Dental Books Co. v. Schultz*, 786 F.2d 486 (2d Cir. 1986).................... 13, 14

*Beekman Paper Co., Inc. v. National Paper Products*, 909 F. 2d 67
  (2nd Cir. 1990)................................................................................................ 15

*Bogle-Assegai v. Connecticut*, 470 F. 3d 498 (2d Cir. 2006) ................................... 7

*Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733 (2d. Cir. 1999) ............................... 6

*Chemiakin v. Yefimov*, 932 F. 2d 124 (2d Cir. 1991) ............................................ 14

*Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8 (2d Cir. 2019)...................................... 6

*General Brewing Co. v. Law Firms of Gordon, Thomas*,
  694 F.2d 190 (9th Cir. 1982) ................................................................................ 14

*Greene v. United States*, 13 F.3d 577 (2d Cir. 1994) ............................................... 7

*In re Cosmopolitan Aviation Corp.*, 763 F.2d 507 (2d Cir. 1985) ........................ 15

*In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129 (2d Cir. 2008)................. 6, 7

*Katel Ltd. v. AT&T Corp.*, 607 F. 3d 60 (2d Cir. 2010) .......................................... 6

*Kenneth Michael Wright, LLC v. Kite Bros., LLC*, No. 17-30450,
  2018 WL 400743 (5th Cir. Jan. 12, 2018) ........................................................... 14

*Oscar Gruss & Son v. Lumbermens Mutual Casualty Co.*, 422 F. 2d 1278
  (2d Cir. 1970) ........................................................................................................ 13

*Wal-Mart Stores, Inc., v. Visa USA, Inc.*, 396 F.3d 96 (2d Cir. 2008).................... 7

### <u>Statutes and Rules</u>

Rule 38 of the Federal Rules of Appellate Procedure ...................................... 13, 15

## STATEMENT OF THE CASE

In 2018, Appellants hired Computools LLC ("Computools"), a software development company, to make a prototype of their Child Care Match system, which they described as "an online marketplace that connects childcare providers with Parents, Talent and Vendors to create a better childcare experience." Amended Complaint ("Am. Compl.") ¶ 10 (A-48).

After signing a non-disclosure agreement in February 2018, Appellants shared with Computools their "Child Care Match System [that] was the heart of Plaintiff's design and was central to the project." Am. Compl. ¶¶ 20-21 (A-50).

Computools agreed to build the prototype based on Appellants' design, and the parties entered into a Service Agreement dated April 10, 2018, which "outlined the development services for the computer prototype." Am. Compl. ¶ 25 (A-52).

The Service Agreement required Computools to "provide software development and consulting services (hereinafter collectively referred to as the Services) for the Client." A-63. The Service Agreement further provided that "[a] detailed description of such Services shall be determined by the Specifications which are the respective Additional Agreements to the service Agreement as its integral parts. The scope of services is strictly limited to the content of respective Additional Agreement." A-63.

The only such Additional Agreement provided for "software development services including business analysis and UX [user experience] prototyping," to be accomplished by Computools within three weeks in exchange for $4000. A-70. Nothing in the Service Agreement or the Additional Agreement required Computools to create its own "unique prototype of the Child Match System not currently in use in the market by other competitors," as Appellants allege. Am. Compl. ¶ 53 (A-57).

"The prototype was created and finalized by defendants by April 27, 2018." Am. Compl. ¶ 31 (A-52). Appellants accepted the prototype and paid Computools $4000 for it as the parties had agreed to in the Service Agreement. *Id.*

Then, on June 21, 2018 -- following Computools' delivery of the prototype pursuant to the Service Agreement and Appellants' acceptance of that prototype -- Computools provided the Appellants with its 80-page "Vision Document" (A-167-247) setting out Computools' proposals for building the actual website, its "'blueprint' for designing the computer code necessary to create the Child Match System." Am. Compl. ¶ 32 (A-52).

At that time, Computools also provided the Appellants with "a project estimate of $100,210, reflecting 2750 hours of development time over four months," as its "fee to implement the vision plan to create the backend programing [sic] and consumer facing graphic interfacing for Child Care's business site." Am.

Compl. ¶¶ 34-35 (A-53).[1] The Vision Document in Section 3.5.3 included a

hyperlink to the completed prototype. A-185 (the hyperlink still works, and brings

up the prototype in an interactive format).

The matter had then lain dormant for over two years until September 2020,

when Appellants re-contacted Computools and "indicated they had found investors

and were ready to move forward with the project. At that time Artem Barbura

informed Plaintiff that the costs had risen to $113,750, and time for development

moved to 6-8 months for completion. However, on October 4, 2020, Artem

Barbura agreed to reduce the fee to $104,187." Am. Compl. ¶ 36 (A-53).

In November 2020, Appellants contacted Computools' designer of the

prototype "to invite her back into the project due to her extensive involvement with

the projects' development. On November 6, 2020, to Shelomentseva's great

dismay, Ekaterina Fandieieva informed her that a very similar site was launched by

another childcare company, as it happens in Australia." Am. Compl. ¶¶ 37-38 (A-

53). Fandieieva explained that she had "found it a few months ago, when [she]

already found a kindergarten for [her] child." Am. Compl. ¶ 43 (A-54).

Having subsequently learned that the Australian website was acquired by

another Australian child care company for $11 million, Am. Compl. ¶ 48 (A-56),

---

[1] In the Vision Document, Computools proposed, *inter alia*, to conduct an "initial idea deep research," and defined the market for such research as New York City. A-174, 176.

Appellants decided to sue Computools for that exact amount (albeit in the U.S. dollars, not Australian).

The original complaint alleged that Computools had sold the prototype to the Australian website, and asserted five causes of action for (1) violations of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1832; (2) breach of contract; (3) copyright infringement; ( 4) unjust enrichment; and (5) violations of New York Trade Secrets Law. A-280.[2]

Computools' motion to dismiss the original complaint demonstrated that the Australian website had substantially predated and could not have been based on Appellants' prototype. A-281. Appellants then filed their Amended Complaint, raising only two claims, for breach of contract and for "loss of business opportunity," and alleging that Computools "breached the Service Contract by failing to deliver the items required pursuant to the terms of the contracts, i.e. a unique prototype of the Child Match System not currently in use in the market by other competitors." Am. Compl. ¶ 53 (A-57).

---

[2] Appellants did not include the original complaint in their appendix, but they did include numerous other items that should have been excluded under FRAP 30(a) and Local Rule 30.1(a) and (f). Nor did Appellants ever discuss or agree on the contents of their appendix with Computools pursuant to FRAP 30(b)(1). Despite its title "Joint Appendix" and its unauthorized use of Computools' counsel's name on the title page, the appendix was prepared and filed unilaterally by Appellants.

By order issued on November 13, 2023, the District Court granted
Computools' motion to dismiss the Amended Complaint (A-278-285), which order
is now on appeal before this Court.

## SUMMARY OF ARGUMENT

The District Court has properly found that "Plaintiffs fail to point to a single
contractual term in the Agreement which creates the contractual obligations they
presently claim were owed." Decision at 6 (A-283).[3]

As shown below, Appellants' arguments on appeal were not raised before
the District Court and are therefore forfeited, and none has the slightest merit,
making the appeal frivolous within the meaning of FRAP 38.

## ARGUMENT

### 1.  Appellants forfeited their arguments by failing to present them to the District Court.

Appellants predominantly rely on arguments never presented below and
impermissibly raised for the first time on appeal. In particular, Appellants assign
the following errors to the District Court's decision (App. Br. at 8):

> 1. Did the District Court err by substituting its opinion of the
> intent of the parties instead of interpreting the Contract
> Documents to see if Plaintiffs' claims for breach of contract
> were feasible regarding creation of the prototype?

---

[3] The District Court had also dismissed Appellants' claim for "lost business
opportunities" (A-284-85), which claim Appellants abandoned on appeal.

5

2. Did the District Court err, by not finding certain terms of the Contract were ambiguous within the contract, where the parties disagreed as to their meaning?

3. Did the District Court err by holding the Vision Document was not an Intergal part of the Contract?

4. Did the District Court violate public policy by denying Plaintiffs the benefit of their bargain?

Regarding the first issue, the District Court made no error in its ruling that "when the terms of a written contract are clear and unambiguous, the intent of the parties must be found therein, and '[t]he words and phrases used in an agreement must be given their plain meaning so as to define the rights of the parties.' *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12-13 (2d Cir. 2019) (citation omitted). Furthermore, '[w]here 'the parties' intent is unambiguously conveyed by the plain meaning of the agreements, ... interpretation is a matter of law.' *Id.* (quoting *Crane Co. v. Coltec Indus., Inc.*, 171 F.3d 733, 737 (2d. Cir. 1999))." Appellants' argument about the District Court's "substituting its opinion . . . instead of interpreting the Contract Documents" flies in the face of the District Court's ruling and is utterly groundless.

The remaining arguments (issues 2-4) fare no better. As a threshold matter, Appellant had failed to present any of these arguments to the District Court below, and forfeited them in consequence. "An argument raised for the first time on appeal is typically forfeited. *See In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008)." *Katel Ltd. v. AT&T Corp.*, 607 F. 3d 60, 68 (2d Cir.

6

2010). "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Bogle-Assegai v. Connecticut*, 470 F. 3d 498, 504 (2d Cir. 2006) (quoting *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994)); *see also Wal-Mart Stores, Inc., v. Visa USA, Inc.*, 396 F.3d 96, 124 n.29 (2d Cir. 2008) ("The law in this Circuit is clear that where a party . . . advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal.") (internal quotation marks and citation omitted)).

In particular, Appellants never argued before the District Court that "certain terms of the Contract were ambiguous" (issue 2) – indeed, there is no mention of any "ambiguity" or any "ambiguous" terms in Appellants' brief below, A-140-157. Likewise, Appellants never argued below that the Vision Document was "an Integral part of the Service Agreement" (issue 3), nor did Appellants advance any public policy arguments before the District Court (issue 4). Accordingly, Appellants have forfeited all these arguments.

## 2. <u>Appellants' forfeited arguments have no merit</u>.

Although the Court may consider forfeited arguments in its discretion to avoid manifest injustice, *In re Nortel Networks,* 539 F.3d at 133, there is no such risk here because these makeweight arguments have no merit. The Service Agreement required Computools to develop a prototype, and Computools developed that prototype based on Appellants' own Child Care Match model,

which was "the heart of Plaintiff's design." Am. Compl. ¶ 21 (A-50). Computools delivered its prototype to Appellants on April 27, 2018, and Appellants accepted the delivery without any reservations and paid $4,000 for it pursuant to the Service Agreement. Am. Compl. ¶ 31 (A-52). Nothing in the Service Agreement required Computools to create "a unique prototype of the Child Match System not currently in use in the market by other competitors," as Appellants allege, Am. Compl. ¶ 53 (A-57), or to "do[] sufficient market research to discover that this other website (which was fully operational in 2017) existed in the Australian market," as they argue on appeal, Appellants' Brief ("App. Br.") at 4.

Subsequently, in June 2018, Computools provided Appellants its "Vision Document" – a technical "blueprint" for building a fully functional website.[4] The Vision Document (A167-247) was not a contract as it did not come close to satisfying the basic definition of a "contract," lacking any indicia of a legally enforceable agreement – there were no parties, no consideration, and no bargain in the Vision Document. As the District Court stated in its Decision, "the Vision Document was a working document to summarize 'the technical details of the

---

[4] *See* Am. Compl. ¶¶ 31-32 (A-52) ("The prototype was created and finalized by defendants by April 27, 2018. . . . Plaintiff received a 'Vision' document on June 21, 2018, which was prepared by Computools and contained a detailed description of the goals and requirements of the project. The Vision document was a 'blueprint' for designing the computer code necessary to create the Child Match System.").

project' and Plaintiffs do not allege either party understood it to be anything else." Decision at 7 (A-284).

Nor was the Vision Document an "Integral part" of the Service Agreement, as Appellants now argue. Indeed, the Service Agreement in section 1.1 expressly provides that "[t]he scope of services is strictly limited to the content of respective Additional Agreement" (A-63), and the only such Additional Agreement to the Services Agreement was the "Additional Agreement No. 1," whereby Computools agreed to build the prototype in 3 weeks for $4000, reflecting 100 hours of work (A-70). Computools had done just that, and Appellants accepted the prototype in April 2018 without reservations and paid for it.

Then, in June 2018 -- after Computools had already built and delivered the prototype, and after Appellants had accepted and paid for it -- Computools provided Appellant with its 80-page "Vision Document" laying out Computools' proposals for building the fully-fledged website. Appellants concede that the Vision Document "was a 'blueprint' for designing the computer code necessary to create the Child Match System." Am. Comp. ¶ 32 (A-52); *see also* Am. Compl. ¶ 29 (A-51) ("The Vision Document . . . outlined the technical details of the project."); A-174 ("The purpose of this [Vision] document is to describe goals and requirements of the project.").

Moreover, the Vision Document expressly states that it "applies to the Child Care Match portal, which will be implemented by the Development team" (A-174) – not to the prototype already delivered and accepted under the Service Agreement, and included in the Vision Document. *See* A-185 (Section 3.5.3 of the Vision Document with a hyperlink to the "interactive prototype").

Computools initially proposed to complete the work outlined in the Vision Document in four months for $100,210, reflecting 2750 hours of work. It is in the Vision Document that Computools proposed to do an "initial idea deep research." A-174.[5] However, the parties had never agreed on those proposals, and had never entered into a contract to implement them. Accordingly, none of those proposals made by Computools in the Vision Document imposed any duties upon Computools. The Vision Document remained what it was – Computools' "'blueprint' for designing the computer code necessary to create the Child Match System," Am. Compl. ¶ 32 (A-52), providing "a basis for detailed software design

---

[5] Even that "deep research" proposal in the Vision Document was to be limited to the New York City market and did not contemplate worldwide research that would have encompassed Australian websites, let alone required Computools "to do a search at least nationally, if not internationally for a patent, to discover if a similar product or concept is already in the market." App. Br. at 24. In any event, the Vision Document never became a contract between the parties, and none of its proposals became a binding commitment on Computools.

10

and development" for "the Child Care Match portal, which will be implemented by the Development team." A-174.

As the District Court correctly ruled, "setting aside the issue that this language still does not suggest an obligation to develop an entirely novel product, Plaintiffs also fail to allege the Vision Document is a contract between the parties. As Plaintiffs explain in the Amended Complaint, the Vision Document was a working document to summarize 'the technical details of the project' and Plaintiffs do not allege either party understood it to be anything else." Decision at 6-7 (A-283-84).

Furthermore, the case presents no public policy issues whatsoever, nor does the District Court's ruling deny Appellants any benefits of their bargain with Computools: Appellants contracted with Computools for a prototype of their Child Care Match system in exchange for $4000, and they got exactly what they had bargained for.

Finally, to the extent Appellants now hang their hats on the "business analysis" part of the "business analysis and UX prototyping" language of the Service Agreement, this argument is also forfeited as not preserved for the appellate review. Indeed, in their brief below, Appellants only made one factual reference to the "business analysis" phrase in the Service Agreement, A-154 ("In the agreement, Defendant was to provide Software development service including

11

business analysis and UX prototyping"), and also made two references to the same phrase appearing in the Vision Document. But Appellants never argued below -- as they do now with 25 references to "business analysis" in their appellate brief -- that it required Computools to "conduct[] an extensive analysis, strategic planning and policy development concerning her prototype as part of its work for Plaintiff" (App. Br. at 13), or "was for the purpose of in-depth market research to determine what competition there was in the space and to learn if others where operating similar websites." App. Br. at 14. In support of these sweeping propositions, Appellants do not refer to any contractual terms (as there are no such terms) but only cite a Wikipedia article on "business analysis." App. Br. at 13.

This new argument also has no merit. Computools was a software development company, and the Service Agreement required Computools to provide "*software development services* including business analysis and UX prototyping" (A-70) (emphasis added) -- not "an extensive analysis, strategic planning and policy development" (App. Br. at 13), or an "in-depth market research to determine what competition there was in the space and to learn if others where operating similar websites" (*id.* at 14), or "a search at least nationally, if not internationally for a patent, to discover if a similar product or concept is already in the market." *Id.* at 24 (an absurd requirement for a software company). Indeed,

12

when Computools delivered the prototype to Appellants in April 2018 without any of the above, Appellants accepted and paid for it without any reservations.

### 3.  The Appeal is frivolous within the meaning of FRAP 38.

The Appeal is frivolous within the meaning of FRAP 38 because it primarily rests on forfeited arguments never raised below. As shown, none of these arguments has the slightest merit.

FRAP 38 states: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee."[6]

Damages and costs for frivolous appeal may be awarded "as a matter of justice to the appellee and as a penalty against the appellant." *Bartel Dental Books Co. v. Schultz*, 786 F.2d 486, 490 (2d Cir. 1986) (quoting FRAP 38 advisory committee note).

This Court has awarded FRAP 38 damages and costs for frivolous appeal "[i]n view of the superfluity of issues on appeal, the frivolity of almost all of them, and the briefing of many in a manner that simply ignored the abundant evidence supporting the determination of the jury and the judge." *Oscar Gruss & Son v.*

---

[6] Concurrently with this brief, Computools makes a separately filed motion pursuant to FRAP 38.

*Lumbermens Mutual Casualty Co.*, 422 F. 2d 1278, 1284 (2d Cir. 1970). *See also Bartel Dental*, 786 F. 2d at 490-91 ("Bartel and Mapleton have raised only frivolous issues on this appeal. . . . The imposition of Rule 38 sanctions on Bartel and Mapleton is justified in this case."); *Chemiakin v. Yefimov*, 932 F. 2d 124, 130 (2d Cir. 1991) ("In the instant case, in light of the lack of jurisdiction, coupled with the weakness of appellants' arguments on the merits, we impose a damage award of $2,500, along with double costs and attorney's fees to appellees. . . . The award of damages, double costs and attorney's fees will serve to compensate appellees, in part, for the time and money that they have expended.").

In particular, an appeal could be deemed frivolous where – as here – the appellants rely predominantly on arguments not properly preserved below. *See*, *e.g.*, *Kenneth Michael Wright, LLC v. Kite Bros., LLC*, No. 17-30450, 2018 WL 400743 (5th Cir. Jan. 12, 2018) ("[A]n appeal can be considered frivolous when an appellant gives the court nothing to consider in the appeal. Appellant gave us nothing to properly consider here. We could not consider the two arguments Appellant impermissibly raised for the first time on appeal.") (internal citation omitted); *General Brewing Co. v. Law Firms of Gordon, Thomas*, 694 F.2d 190 (9th Cir. 1982) (imposing sanctions for arguments on issues that were not properly preserved).

14

FRAP 38 sanctions may include the granting of reasonable attorneys' fees to the party forced to defend the frivolous appeal. *See In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 517 (2d Cir. 1985); *Alvarez v. Bahama Cruise Line, Inc.*, 898 F.2d 312, 318 (2d Cir. 1990) (awarding attorneys' fees and costs for a frivolous appeal and remanding to the district court for calculation of the award); *Beekman Paper Co., Inc. v. National Paper Products*, 909 F. 2d 67, 70 (2nd Cir. 1990) ("Because Beekman's appeal is wholly without merit, the imposition of rule 38 sanctions is justified in this case. Accordingly, we award appellees both their attorneys' fees and costs on appeal, and remand to the district court for determination of the appropriate amounts.") (internal citations omitted).

## CONCLUSION

Computools respectfully submits that the Court should affirm the District Court's judgment, dismiss the appeal as meritless and frivolous, impose FRAP 38 sanctions against Appellants and their counsel, and remand to the District Court for determination of the proper amount of the award.

April 19, 2024

Dimitry Joffe
Joffe Law P.C.
*Counsel for Appellee*
54 West 47th Street, Suite
6r1 New York, New York
10036 (917) 929-1964
dimitry@joffe.law

15

## CERTIFICATE OF COMPLIANCE

I, Dimitry Joffe, counsel for Appellee, certify that this document (1) complies with Fed. R. App. P. 32(a)(7) and Local Rule 32.1 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3427 words; and (2) complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14.

April 19, 2024

/s/ Dimitry Joffe
Dimitry Joffe
JOFFE LAW P.C.
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I, Dimitry Joffe, counsel for Appellee, hereby certify that on this 19th day of April 2024, pursuant to Local Rule 25.1(h), I caused a copy of Appellee's Brief to be sent electronically through the ACMS system to Appellants' counsel Robert L. Greener, Law Office of Robert L. Greener, 112 Madison Avenue, New York, New York 10016, (646) 415-8920, rlg@greenerlegal.com.

April 19, 2024

/s/ Dimitry Joffe
Dimitry Joffe
JOFFE LAW P.C.
*Counsel for Appellant*